UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Natam Moreira Aguiar, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Civil Action No. 1:25-cv-12706-IT |
| | * | |
| Antone Moniz, et al., | * | |
| | * | |
| Respondents. | * | |

MEMORANDUM & ORDER

October 22, 2025

TALWANI, D.J.

Before the court is Petitioner Natam Moreira Aguiar's <u>Petition for Writ of Habeas Corpus</u> [Doc. No. 1] challenging Petitioner's detention by U.S. Immigration and Customs Enforcement ("ICE") without a bond hearing. In response, Respondents assert that the court does not have jurisdiction over this case, and, in the alternative, that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1225(b)(1). Respondents' Opp'n 2 [Doc. No. 8].

**I.    Background**

On or about May 5, 2021, a United States Border Patrol ("USBP") agent encountered Petitioner near the San Luis, Arizona Port of Entry and took Petitioner into USBP custody. Decl. of Keith Chan ¶ 7 [Doc. No. 21]. On May 19, 2021, Petitioner received a Notice of Custody Determination which authorized, pursuant to the authority contained in Section 236 of the Immigration and Nationality Act, that Petitioner be released from custody. Petition Ex. Evidence, at 1 [Doc. No. 1].

On September 22, 2025, as directed by ICE, Petitioner reported to the ICE office in Burlington, Massachusetts, where ICE officers arrested and detained him. Petition ¶ 1 [Doc. No.

1]. At 5:38 p.m., Petitioner filed his Habeas Petition contesting his detention and alleging that, to the best of counsel's knowledge, Petitioner was detained in Massachusetts. Petition ¶ 5 [Doc. No. 1]; Petitioner's Reply Ex. 1 [Doc. No. 23-1].

At 8:39 a.m., the following morning, this court issued an Order Concerning Service of Petition and Stay of Transfer or Removal [Doc. No. 3]. The Order directed Respondents not to transfer Petitioner to another district unless the government provides advance notice of the intended move and directed that "[i]f the government contests that petitioner is presently confined in the District of Massachusetts, the government shall file a notice in writing on the docket stating the name of the facility in which petitioner is confined." Id. at 3-4. The Order directed Respondents further that "[s]uch notice shall be provided promptly after the government becomes aware of that fact." Id. at 4. Finally, the Order directed Respondents that Petitioner shall not be deported, removed, or otherwise transferred outside the United States absent further order of the court. Id.

On September 24, 2025, Respondents filed an Assented-to Motion for an Extension of Time to Respond [Doc. No. 6]. Respondents did not dispute at that time that Petitioner was in Massachusetts or that the court had jurisdiction over the habeas petition. The court granted the requested extension. Elec. Order [Doc. No. 7].

On September 26, 2025, Respondents filed a Response in which they reported for the first time that Petitioner was no longer in the District of Massachusetts and had been transferred to Buffalo, New York. Respondents' Opp'n 2 [Doc. No. 8]. Respondents acknowledged the "close question" as to the court's jurisdiction given the timing of the transfer. Id.

On October 3, 2025, Respondents notified the court that, the prior day, ICE had transferred Petitioner to the Jackson Parish Correctional Center in Jonesboro, Louisiana. Notice

of Transfer ¶ 1 [Doc. No. 19]. Respondents' counsel also reported that she had not yet secured a declaration from ICE as to the exact timing on the initial transfer to New York. Id. ¶ 1 n.1. The court immediately ordered Respondents to not move Petitioner out of the country while Respondents' challenge to this court's jurisdiction was pending. Elec. Order [Doc. No. 20].

On October 5, 2025, the ICE Assistant Field Office Director in Burlington, Massachusetts, filed a Declaration stating that he had "examined the official records available" to him, and that ICE transferred Petitioner to Batavia, New York, "via a flight which departed Bedford, Massachusetts, at approximately 5:36 p.m." on September 22, 2025. Decl. of Keith Chan ¶¶ 4, 10 (emphasis added). The Declaration does not provide the source of this information, and it does not state whether the approximate departure time refers to the departure from a gate, from the tarmac, or from Massachusetts air space.

The Declaration reported further that Petitioner is currently housed in the Jackson Parish Correctional Center. Id. ¶ 5.

## II.    Discussion

Respondents contend that this court does not have jurisdiction over this case because Petitioner "was not in the custody of a custodian in the District of Massachusetts" at the time the petition was filed given "ICE was in the process of transferring Petitioner to Buffalo (Batavia) Service Processing Center in Buffalo, New York" and "[u]pon information and belief, Petitioner was in flight at the time the Petition was filed." Respondents' Opp'n 2 [Doc. No. 8]. Further, Respondents argue that, even if this court has jurisdiction, Petitioner's detention is authorized pursuant to 8 U.S.C. § 1225 (b)(1). Id.

"As provided by statute, a habeas petition 'shall allege the facts concerning the application's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority, if known[.]'" Ozturk v. Trump, 777 F. Supp. 3d 26, 34 (D.

3

Mass. 2025) (citing 28 U.S.C. § 2242). Should the court decide to grant a writ of habeas corpus, the writ "shall be directed to the person having custody of the person detained." 28 U.S.C. § 2243. Accordingly, "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." Rumsfeld v. Padilla, 542 U.S. 426, 428 (2004); Ozturk v. Hyde, 136 F.4th 382, 390 (2d Cir. 2025) ("We begin with two traditional requirements for a federal court to entertain a habeas petition: that the petition be filed in the district of confinement and that it name the petitioner's immediate custodian.").

As to the first requirement, "[t]he federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" Padilla, 542 U.S. at 434 (citing 28 U.S.C. § 2242). Generally, the proper respondent is "some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." Id. at 434–35 (2004) (quoting Wales v. Whitney, 114 U.S. 564, 574 (1885)).

Respondents argue that Petitioner "was not in the custody of a custodian in the District of Massachusetts" when the petition was filed. Respondents' Opp'n 2 [Doc. No. 8]. That Petitioner was placed on a flight leaving Bedford, Massachusetts, "approximately" two minutes before he filed his petition, see Declaration of Keith Chan 3 [Doc. No. 21], does not mean that an individual in the Western District of New York had custody of Petitioner. Nor does Respondents' Declaration demonstrate that Petitioner was no longer in the custody of a Massachusetts custodian or name a different immediate custodian that assumed custody of Petitioner during transit.

Further, assuming for the sake of argument that Petitioner's immediate custodian no longer was Antone Moniz, given Petitioner was no longer in the Plymouth County Correctional Facility, Petitioner properly names Patricia Hyde in his Petition. Patricia Hyde is the New England Field Office Director for U.S. Immigration and Customs Enforcement. Petition ¶ 8.[1] Absent any information suggesting the contrary by Respondents, the court finds that during transit Hyde or an unknown custodian would have assumed the role of Petitioner's immediate custodian. See Ozturk v. Hyde, 136 F.4th 382, 393 (2d Cir. 2025) (noting, where petitioner claimed that Hyde was her immediate custodian while she was in transit, that the government never clarified who, if not Hyde, had immediate custody and concluding the custodian was either Hyde or an unknown custodian).

In sum, the court concludes Petitioner's habeas petition identified the proper custodian, satisfying the immediate custodian rule.

The Petition also satisfies the district of confinement requirement. "[T]he court issuing the writ must have personal jurisdiction over the person who holds the petitioner in custody." Vasquez v. Reno, 233 F.3d 688, 690 (1st Cir. 2000); Padilla, 542 U.S. at 442. "In habeas challenges to present physical confinement . . . the district of confinement is synonymous with the district court that has territorial jurisdiction over the proper respondent." Padilla, 542 U.S. at 444. This is because in such challenges the immediate custodian rule applies, and "[b]y definition, the immediate custodian and the prisoner reside in the same district." Id. Here, the Petition identifies an immediate custodian in Massachusetts. Because the court has jurisdiction

_____

[1] Respondent lists Patricia Hyde as the Boston Field Office Director in some of their filings. See Notice of Transfer [Doc. No. 19]. In either respect, the court finds, absent additional information, that Hyde would have been Petitioner's immediate custodian once he was no longer in Moniz's custody.

over this custodian, the Petition was correctly filed in the district of confinement. This court has jurisdiction over Petitioner's action.

Accordingly, the court must evaluate Respondents' argument that Petitioner is detained under 8 U.S.C. § 1225 (b)(1) and is therefore not entitled to a hearing. Respondents' Opp'n 4 [Doc. No. 8]. Here, the court finds that the reasoning in Doe v. Moniz, __ F. Supp. 3d __, 2025 WL 2576819 (D. Mass. Sept. 5, 2025), and in similar cases in this district and in other districts, and in this court's recent decision in Elias Escobar v. Hyde, et al., 2025 WL 2823324 (D. Mass. Oct. 3, 2025), remains correct. As this court noted in Doe, "[w]hereas Section 1225(b) authorizes the Government to detain certain aliens seeking admission into the country, Section 1226 authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." Id. at *5  (citation modified) (citing Jennings v. Rodriguez, 583 U.S. 281, 289 (2018)). Here, "there is no dispute that [Petitioner] had been residing in the United States for some time" when Respondents detained Petitioner. Id. Consequently, "Section 1225 does not apply to Petitioner." Id.

The Board of Immigration Appeals' decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), is unpersuasive and does not change the analysis. See Elias Escobar, 2025 WL 2823324, at *3 (citing cases reaching the same conclusion).

Accordingly, the Petition for Writ of Habeas Corpus [Doc. No. 1] is GRANTED as follows. Where Petitioner is currently not being detained in Massachusetts, Respondents shall return Petitioner to Massachusetts within 48 hours of the court's issuance of this Order. No later than October 29, 2025, Moreira Aguiar must be provided a bond hearing pursuant to 8 U.S.C. § 1226 or, if the the immigration judge declines to conduct a bond hearing based on Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), Respondent shall so advise the court so that this

court may conduct the bond hearing. Any decision by the immigration judge to retain Moreira

Aguiar in custody following a bond hearing shall set forth the reasons for the continued

detention.

     IT IS SO ORDERED.

October 22, 2025                             /s/ Indira Talwani
                                           United States District Judge